**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAFE FLEET HOLDINGS LLC, SAFE FLEET ACQUISITION CORP., SEON HOLDINGS CORP., SEON DESIGN (USA) CORP., <br><br> *Movants*, <br><br> v. <br><br> HAYDEN AI TECHNOLOGIES, INC., <br><br> *Respondent*. | **CASE NO. _____** <br><br> **UNDERLYING LITIGATION:** <br><br> *Hayden AI Technologies, Inc. v. Safe Fleet Holdings LLC; Safe Fleet Acquisition Corp.; Seon Holdings Corp.; Seon Design (USA) Corp.; Rear View Safety, Inc.; Daniel Pulskamp; Tom Brodsky; Tom Gill; Joseph Schechter; Matthew Thompson; Julian Jimenez; Steven Kwan; Individual One; Does 1-10*, Case No. 1:23-cv-03471-EK-JRC (E.D.N.Y.) |

**Movants' Memorandum of Law in Support of Their
Motion to Quash Third-Party Subpoena of Oak Hill Capital Partners**

**Table of Contents**

I.      Background ...................................................................................................................1

        A.      The Underlying Litigation ................................................................................. 1

        B.      Oak Hill Capital Partners and Clarience Technologies, Inc. ............................... 2

        C.      The Safe Fleet/Seon Defendants.......................................................................... 2

        D.      Hayden's Subpoena to Oak Hill Capital Partners................................................ 4

        E.      Hayden's Efforts to Obtain the Requested Information
                From the Safe Fleet/Seon Defendants and Others ................................................ 4

II.     Legal Standard .............................................................................................................5

III.    Argument ......................................................................................................................6

        A.      Safe Fleet/Seon Defendants Have Standing to Quash Hayden's Subpoena
                Because It Targets Their Confidential Commercial Information ........................... 7

        B.      Hayden's Subpoena Should be Quashed or,
                Alternatively, a Protective Order Should Issue...................................................... 8

                1.      The 2018 and 2024 Acquisitions Are
                        Irrelevant to the Underlying Litigation .........................................................9

                2.      Hayden has No Justification or Need for Further
                        Discovery on Seon Design's ABLE Systems ............................................14

                3.      Hayden has No Justification or Need for General Financial
                        Information About the Safe Fleet Family of Companies............................14

        C.      The Subpoena Should be Quashed to
                Prevent Disclosure of Privileged Information ..................................................... 15

        D.      The Subpoena Should Be Quashed to
                Prevent the Risk of Inconsistent Rulings............................................................ 15

IV.     Conclusion ..................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bernstein v. Travelers Ins. Co.*,
447 F. Supp. 2d 1100 (N.D. Cal. 2006) ................................................................9

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
666 F. Supp. 3d 328 (S.D.N.Y. 2023).................................................................10

*In re Bos. Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.*,
2014 WL 1329944 (S.D. W.Va. Mar. 31, 2014) ...................................................8

*Burns v. Bank of America*,
2007 WL 1589437 (S.D.N.Y. June 4, 2007) ......................................................14

*Catskill Dev. L.L.C. v. Park Place Entm't Corp.*,
206 F.R.D. 78 (S.D.N.Y. 2002) ...........................................................................9

*Citizens Union of City of New York v. Attorney General of New York*, 269 F.
Supp. 3d 124 (S.D.N.Y. Sept. 1, 2017).................................................................6

*During v. City Univ. of N.Y.*,
2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006)........................................................8

*Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*,
618 F.3d 1294 (Fed. Cir. 2010)...........................................................................12

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970).....................................................................11

*Gilead Scis., Inc. v. Khaim*,
755 F. Supp. 3d 285 (E.D.N.Y. 2024) .............................................................5, 8

*In re Glitnir Banki HF.*,
2011 WL 3652764 (Bankr. S.D.N.Y. 2011) .........................................................8

*Hayden AI Technologies, Inc. v. FleetMind Seon Solutions, Inc.*,
Case No. 2:25-cv-00528-JRG-RSP (E.D. Tex.), ECF No. 83 ..........................4, 15

*Hayden AI Technologies, Inc. v. Safe Fleet Holdings LLC*,
Case No. 1:23-cv-03471-EK-JRC (E.D.N.Y. (filed May 8, 2023)) ............................... *passim*

*In re Huang*,
100 F.3d 135 (Fed. Cir. 1996)..............................................................................12

*Hughes v. Hartford Life & Accident Ins. Co.*,
   507 F. Supp. 3d 384 (D. Conn. 2020).................................................................6

*Hybrid Athletics, LLC v. Hylete, LLC*,
   No. 3:17-CV-1767 (VAB), 2019 WL 4127377 (D. Conn Aug. 30, 2019)...............................6

Joint Stock Company Channel One Russia Worldwide v. Infomir LLC, No. 16-
   CV-1318, 2018 WL 6712769 (S.D.N.Y. Nov. 30, 2018)...........................................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)...........................................................................9

*LinkCo, Inc. v. Fujitsu Ltd.*,
   232 F. Supp. 2d 182 (S.D.N.Y. 2002)................................................................10

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).........................................................................9

*Malibu Media, LLC v. Doe*,
   No. 15-CV- 3147, 2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016).............................6

*MG Freesites Limited v. Scorpcast, LLC*,
   Case No. 22-MISC-361, 2023 WL 2822272 (S.D.N.Y. Apr. 7, 2023) .............................10, 11

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
   2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ........................................................8

*Nonio v. Rochford*,
   2011 WL 735271 (D.N.J. Feb. 22, 2011) ...............................................................8

*In re Refco Sec. Litig.*,
   759 F. Supp. 2d 342 (S.D.N.Y. 2011).................................................................7, 8

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995)...........................................................................9

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984).......................................................................................13

*Silverstone Holding Group, LLC v. Zhongtie Dacheng Inv. Mgmt. Co., Ltd.*,
   650 F. Supp. 3d 199 (S.D.N.Y. 2023).................................................................7

*Solow v. Conseco, Inc.*,
   No. 06 Civ. 5988(BSJ)(THK), 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008)..........................7

*In re Terrorist Attacks on September 11, 2001*,
   523 F. Supp. 3d 478 (S.D.N.Y. 2021).................................................................6

*Tropical Sails Corp. v. Yext, Inc.*,
  No. 14 CIV. 7582, 2016 WL 1451548 (S.D.N.Y. Apr. 12, 2016)..............................................8

*Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*,
  No. 10-CV-35A SR, 2013 WL 5652759 (W.D.N.Y. Oct. 15, 2013).......................................14

**Other Authorities**

Fed. R. Civ. P. 26................................................................................................................1, 8, 9, 13

Fed. R. Civ. P. 26(b)(1).................................................................................................................6, 8

Fed. R. Civ. P. 26(b)(1)....................................................................................................................8

Fed. R. Civ. P. 26(b)(2)(C) ..............................................................................................................6

Fed. R. Civ. P. 26(c)(1).....................................................................................................................8

Fed. R. Civ. P. 34............................................................................................................................14

Fed. R. Civ. P. 45.....................................................................................................................1, 8, 14

Fed. R. Civ. P. 45(d) .........................................................................................................................9

Fed. R. Civ. P. 45(d)(3)(A)(iii) ........................................................................................................6

Fed. R. Civ. P. 45(d)(3)(B)(i) ...........................................................................................................6

In accordance with Federal Rules of Civil Procedure 45 and 26, this Court's inherent authority, and applicable Local Rules of the Southern District of New York, movants Safe Fleet Holdings LLC, Safe Fleet Acquisition Corp., Seon Holdings Corp., and Seon Design (USA) Corp. (collectively, "Movants" or "Safe Fleet/Seon Defendants"), by and through undersigned counsel, move to quash the March 25, 2026 subpoena that Hayden AI Technologies, Inc. ("Hayden") served on Oak Hill Capital Partners ("Oak Hill").[1]

As explained below, the Safe Fleet/Seon Defendants have standing for this motion because the information Hayden seeks from Oak Hill includes confidential commercial information of the Safe Fleet/Seon Defendants and of their corporate parent, and likely includes privileged information. Also as explained below, the information Hayden seeks from Oak Hill is irrelevant to, disproportionate to the needs of, and cumulative over party discovery that occurred in the underlying litigation. With no principled justification or need for the information it seeks from Oak Hill, the Court should quash Hayden's subpoena in its entirety.

## I.    Background

The subpoena was issued in the underlying litigation captioned *Hayden AI Technologies, Inc. v. Safe Fleet Holdings LLC*, Case No. 1:23-cv-03471-EK-JRC (E.D.N.Y. (filed May 8, 2023)) (the "EDNY Case"). The movants are defendants in the underlying litigation, which involves allegations of trade-secret misappropriation and patent infringement. Hayden is the plaintiff in the underlying litigation and subpoenaed Oak Hill, which is a private equity firm and former investor in the Safe Fleet/Seon Defendants and related companies.

### A.    The Underlying Litigation

Seon Design (USA) Corp. ("Seon Design"), a movant here and a defendant in the

---

[1] This motion is supported by the attorney declaration of Jordan LaVine ("LaVine Decl."), filed herewith.

underlying litigation, and Hayden compete for sales of equipment and services for automated bus lane enforcement (ABLE) to government entities.  Such ABLE systems include cameras installed on public city buses that are used with processing equipment to detect vehicles parked in city bus lanes.  Seon Design's ABLE systems are sold under the name "ClearLane."

Hayden brought the underlying litigation on May 8, 2023, alleging patent infringement.[2] Hayden filed the fourth-amended and operative complaint on February 26, 2025.[3]  Hayden's amended complaint added trade-secret-misappropriation claims and various other tort claims based on the alleged misappropriation (e.g., RICO claims, tortious interference, breach of contract, unjust enrichment, etc.).[4]  Hayden's claims in the underlying litigation relate to its ABLE system.[5] Hayden alleges infringement of one patent that issued in May 2021 and a second patent that issued in November 2021.[6]  Hayden's trade-secret-misappropriation and other tort claims center around alleged activities that took place from 2021 to 2023.[7]

### B.    Oak Hill Capital Partners and Clarience Technologies, Inc.

In 2018, Oak Hill acquired an ownership stake in the Safe Fleet/Seon Defendants and other related companies.  In 2024, Clarience Technologies, Inc. acquired Oak Hill's stake in the Safe Fleet/Seon Defendants and the related companies.  Details of those acquisitions are not public.

### C.    The Safe Fleet/Seon Defendants

At the time of the 2018 acquisition, the Safe Fleet/Seon Defendants did not have any ABLE products and had only just begun their development.  The first letter of intent for the sale of an ABLE product, for instance, was not until 2023, well after the 2018 acquisition.  The 2018

---

[2]  *See generally*, *Hayden*, Case No. 1:23-cv-03471, ECF 1 (filed May 8, 2023).
[3]  *Id.* at ECF 171 (confidential), ECF 172 (public) (filed Feb. 26, 2025).
[4]  *E.g.*, *id.* at ¶ 2.
[5]  *E.g.*, *id.* at ¶ 42.
[6]  *E.g.*, *id.* at ¶¶ 90, 119.
[7]  *E.g.*, *id.* at ¶¶ 147, 166.

acquisition also predates by several years the 2021 issuance of the two patents asserted in the underlying litigation and the purported misappropriation activities that allegedly began in 2021.

At the time of the 2024 acquisition, there were 33 companies within the Safe Fleet family who made countless products, including "fleet video and evidence management, collision prevention, . . . trailer temperature control, as well as cargo storage systems and several other safety solutions" that "serve[] fleets of every type including school transportation, transit, fire and emergency, law enforcement, work truck, commercial transportation, logistics, construction, agriculture, waste and recycling, industrial, and military."  LaVine Decl., Ex. B.  Further, at the time of the 2024 acquisition, the Safe Fleet/Seon Defendants had not sold an accused product. Moreover, the Safe Fleet/Seon Defendants have never sold a product that has Hayden's alleged trade secrets in it.  Hayden admits that the Safe Fleet/Seon Defendants use technology that does not embody Hayden's alleged trade secrets.

None of the companies acquired in 2018 or 2024, except Seon Design, sells ClearLane or any other ABLE system and instead markets entirely different products that are not relevant the technology at issue here.  For example, the Safe Fleet subsidiary Coban markets state-of-the-art in-car video systems, body cameras, and evidence management solutions for law enforcement and public safety communities—i.e., products that are irrelevant to the underlying patent-infringement and trade-secret-misappropriation claims.  LaVine Decl., Ex. C.  Other products covered by the acquisition include FleetMind's all-in-one waste collection software that plans efficient routes for garbage and recycling trucks and tracks their progress (LaVine Decl., Ex. D.) and school bus camera systems with HD video, audio, and real-time alerts to protect students inside and outside the bus (LaVine Decl., Ex. E).  These are just examples of the many products that were sold by the portfolio companies at the time of Clarience's acquisition.

### D. Hayden's Subpoena to Oak Hill Capital Partners

On March 25, 2026, Hayden served the subpoena on Oak Hill, listing an address in New York, NY as the place for compliance, which is within this District.[8] Hayden's subpoena contains 24 broad document requests and 20 broad deposition topics that generally seek four categories of information: (i) RFPs 2–3, 5–6, 9, 15, 17, and 21–22, and Topics 2, 5, 7, 9, 13, and 15 concern information related to Oak Hill's 2018 stock acquisition investment in the Safe Fleet family of companies (e.g., all contracts and agreements; documents and communications about acquisition negotiations and motivations; documents and communications about terms, representations, guarantees, and warranties of the acquisition; and documents and communications about due diligence); (ii) RFPs 2, 4, 7–9, 11–12, 14, 18, 21, and Topics 1–6, and 8–9 concern information related to Clarience's 2024 acquisition of stock in the Safe Fleet family of companies from Oak Hill Partners; (iii) RFPs 1, 10, and 13, and Topics 10–12 concern information related to the ABLE business; and (iv) RFPs 16, 19–20 , and Topic 14 concern general financial information related to the Safe Fleet family of companies.

### E. Hayden's Efforts to Obtain the Requested Information From the Safe Fleet/Seon Defendants and Others

The Oak Hill subpoena is at least Hayden's fifth attempt to obtain the 2024 Clarience acquisition documents from the Safe Fleet/Seon Defendants and other third parties. To date, Hayden's efforts include (i) two motions to compel against the Safe Fleet/Seon Defendants in the underlying litigation,[9] (ii) a motion to compel filed against a corporate relative of Safe Fleet/Seon Defendants in a companion litigation,[10] (iii) a subpoena and motion to compel in the Eastern

---

[8] LaVine Decl., Ex. A.
[9] EDNY Case, ECF No. 315-1 (moving to compel production of acquisition documents) and ECF No. 356 (moving to compel an interrogatory response about the acquisition).
[10] *Hayden AI Technologies, Inc. v. FleetMind Seon Solutions, Inc.*, Case No. 2:25-cv-00528-JRG-RSP (E.D. Tex.), ECF No. 83.

District of Michigan against the Safe Fleet/Seon Defendants' corporate parent, Clarience Technologies, [11] and (iv) another third-party subpoena to KKR Group Co., Inc., who also participated in the 2024 acquisition.

The 2024 Clarience acquisition documents undoubtedly includes confidential commercial information of the Safe Fleet/Seon Defendants and/or their parent company, Clarience Technologies, and likely includes privileged materials given that it broadly seeks analyses and communications. As explained below, none of this information is relevant to or proportional to the needs of the underlying litigation.

Similarly, the Oak Hill subpoena follows Hayden's years-long efforts to obtain documents related to movant/defendant Seon Design's ABLE business through regular party discovery in the underlying litigation. The Safe Fleet/Seon Defendants have produced over 1,000,000 pages of documents, in fact, from personal and work email accounts; personal and work cloud-based storage systems such as Google Drive and SharePoint; personal and work cell phones; Slack, Teams, and Slack messaging platforms; and other repositories. Those productions include ABLE contracts, invoices, and other financial documents pertinent to any damages in the underlying litigation.[12] Further third-party discovery on Seon Design's ABLE business would be cumulative over existing discovery and, thus, not proportional to the needs of the underlying litigation,

## II.     Legal Standard

A party may move to quash a subpoena issued to a non-party if the objecting party has some real interest or privilege in the information at issue.[13] Even where a movant lacks standing

---

[11] Case No. 2:26-mc-50413-LJM-DRG (E.D. Mich.) (filed Apr. 16, 2026).

[12] The Safe Fleet/Seon Defendants have also produced relevant, non-privileged documents about the 2024 Clarience acquisition; documents pertinent to any liability in the underlying litigation; and documents about the defendants' organizations, Hayden, Hayden's technology and products, and the underlying litigation

[13] *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 293 (E.D.N.Y. 2024) (citing *Hughes*, 327

to challenge a non-party subpoena, a court may nevertheless exercise its inherent authority to limit irrelevant or non-proportional discovery.[14]  "The party issuing the subpoena bears the initial burden of showing that the discovery sought falls within the scope of Rule 26(b)(1)."[15]  The party opposing enforcement then bears the burden of establishing that "one of the grounds for quashing a subpoena applies."[16]

A subpoena may be quashed where, among other grounds, it requires disclosure of "confidential research, development, or commercial information."[17]  A party can have a subpoena quashed by establishing that the requested discovery is not relevant to the propounding party's claims.[18]  And a court "must quash a subpoena that requires disclosure of privileged or other protected matter."[19]

## III.    Argument

The discovery Hayden seeks from Oak Hill would require it to disclose confidential commercial information of the Safe Fleet/Seon Defendants and of their parent company.  The subpoena also seeks likely privileged information.  The subpoena should be quashed in its entirety (both documents and testimony) because the discovery is not relevant to liability or damages of

---

F.R.D. at 57 (explaining that a party may challenge a subpoena issued to a non-party seeking information related to personal rights or privacy privileges)).

[14] Fed. R. Civ. P. 26(b)(2)(C); *Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp. 3d 384, 405 (D. Conn. 2020).

[15] Joint Stock Company Channel One Russia Worldwide v. Infomir LLC, No. 16-CV-1318, 2018 WL 6712769, *5 (S.D.N.Y. Nov. 30, 2018); see also Citizens Union of City of New York v. Attorney General of New York, 269 F. Supp. 3d 124, 139 (S.D.N.Y. Sept. 1, 2017) ("The party seeking discovery bears the initial burden of proving the discovery is relevant.").

[16] *Malibu Media, LLC v. Doe*, No. 15-CV- 3147, 2016 WL 5478433, *2 (S.D.N.Y. Sept. 29, 2016); *see also In re Terrorist Attacks on September 11, 2001*, 523 F. Supp. 3d 478, 489 (S.D.N.Y. 2021) ("If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden").

[17] Fed. R. Civ. P. 45(d)(3)(B)(i).

[18] *Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17-CV-1767 (VAB), 2019 WL 4127377, at *12 (D. Conn Aug. 30, 2019).

[19] Fed. R. Civ. P. 45(d)(3)(A)(iii).

Hayden's trade-secret-misappropriation or patent-infringement claims in the underlying litigation and, for the requests specific to any Safe Fleet/Seon Defendants' ABLE business, Hayden has not shown that the Safe Fleet/Seon Defendants' massive document production in the underlying litigation is in any way insufficient for the needs of the case. Lastly, this is not the first time Hayden has pursued this irrelevant, likely privileged, and disproportionate discovery. This Court should not permit third-party discovery where Hayden has not shown the relevance of, or any need for, the information it seeks.

The Safe Fleet/Seon Defendants therefore respectfully request that this Court quash the subpoena or, in the alternative, issue a protective order prohibiting disclosure. If the Court finds that the Safe Fleet/Seon Defendants lack standing, they respectfully request that the Court use its inherent authority to limit the discovery Hayden may seek.

### A.   Safe Fleet/Seon Defendants Have Standing to Quash Hayden's Subpoena Because It Targets Their Confidential Commercial Information

It is "well-established" that a person with "a real interest in the documents" sought by a subpoena "has standing to raise objections to their production" and, thus, has "standing to oppose the subpoena."[20] Persons, including corporations, "have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena."[21]

Here, the Safe Fleet/Seon Defendants have an interest in the documents Hayden seeks from Oak Hill because the four general categories of documents that Hayden seeks (the 2018 acquisition, the 2024 acquisition, ABLE documents, and general financial information of the Safe

---

[20] *Solow v. Conseco, Inc.*, No. 06 Civ. 5988(BSJ)(THK), 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008) (collecting cases finding/holding that a person has standing to quash a subpoena for records pertaining to their personal financial affairs); *see also Silverstone Holding Group, LLC v. Zhongtie Dacheng Inv. Mgmt. Co., Ltd.*, 650 F. Supp. 3d 199, 202-03 (S.D.N.Y. 2023).

[21] *Refco*, 2014 WL 5420225, at *4 ((internal quotation marks and/or citations omitted); *see also Silverstone*, 650 F. Supp. 3d at 202-03.

Fleet companies) will largely consist of the Safe Fleet/Seon Defendants's and Clarience Technologies's confidential commercial information and likely their privileged information as well.[22] Thus, there is no doubt that the Safe Fleet/Seon Defendants have standing here because they have a real interest in the documents sought.

In addition, the Court may "exercise its inherent authority to limit irrelevant information or non-proportional discovery."[23] Indeed, "the question of standing is beside the point where the objection to the subpoena is on relevance or proportionality."[24]

### B. Hayden's Subpoena Should be Quashed or, Alternatively, a Protective Order Should Issue

Discovery is limited to information "relevant to any party's claim or defense and proportional to the needs of the case."[25] "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings."[26] And when a subpoena seeks confidential commercial information, as here, the court must balance relevance against the intrusion into the affected individual's privacy interests.[27]

---

[22] *Tropical Sails Corp. v. Yext, Inc.*, No. 14 CIV. 7582, 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016) ("A legitimate privacy interest certainly exists in the financial documents of a privately held company."); *In re Bos. Sci. Corp. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 1329944, at *1, n.1 (S.D. W.Va. Mar. 31, 2014) (holding that a company "plainly has a personal right or privilege in its confidential business information").

[23] *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 294 (E.D.N.Y. 2024) (internal quotation marks and/or citations omitted).

[24] *Gilead Scis.*, 755 F. Supp. 3d at 294 (citing *All Cnty.*, 2020 WL 5668956, at *2 (construing the defendant's motion to quash a subpoena on relevancy and proportionality grounds as a motion for a protective order pursuant to Rule 26(c)(1)).

[25] Fed. R. Civ. P. 26; *see also In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) ("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)").

[26] *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (citation omitted); *see also Nonio v. Rochford*, 2011 WL 735271, at *2 (D.N.J. Feb. 22, 2011) (quashing a subpoena where plaintiff failed to "adequately demonstrate[] the relevance of the requested documents").

[27] *During v. City Univ. of N.Y.*, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006) ("Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement.") (collecting cases); *In re Glitnir Banki HF.*, 2011 WL 3652764,

The discovery limitations of Rules 26 and 45(d) are intended to "discourage lawyers from using discovery to 'fish' for new claims or defenses and/or to run up unjustifiable litigation bills."[28]

       1.       The 2018 and 2024 Acquisitions Are
                    Irrelevant to the Underlying Litigation

The Oak Hill subpoena seeks information about the Safe Fleet/Seon Defendants being acquired in 2018 and 2024, which are entirely unrelated to the allegations in the underlying litigation, especially given that the Safe Fleet/Seon Defendants have many lines of business beyond ABLE, which is the only business at issue in the underlying litigation.

The central allegations in the underlying litigation are patent infringement and trade-secret misappropriation. Acquisition documents—some of which predate the issuance of any asserted patent and predate the alleged misappropriation activities—have no connection to whether Hayden can prove that defendants in the underlying case (including the Safe Fleet/Seon Defendants) infringe any patent or have misappropriated any alleged trade secrets. Acquisition documents are similarly irrelevant to any damages theory for infringement or misappropriation.

Patent damages are based on lost profits or a reasonable royalty.[29] A reasonable patent royalty is based on a hypothetical license that a patent owner would have negotiated with an accused infringer based on the use of the patented invention.[30] Lost profits compensate the patent owner for any money that it would have made if not for the infringement.[31] Agreements to acquire stock in a massive portfolio of companies, the value of the entirety of the Safe Fleet/Seon Defendants themselves, and the values of their overall businesses do not factor in to either analysis.

---

at *5 (Bankr. S.D.N.Y. 2011).

[28] *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006); *see Catskill Dev. L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002) ("No fishing expeditions will be tolerated.").

[29] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

[30] *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012).

[31] *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

The acquisitions were not on an individual-company basis, much less an individual-product basis. It would be pure speculation to think that acquisition documents or testimony—which pertain to entire companies that collectively had countless products—would provide any insight into the one product line at issue in the underlying litigation: Seon Design's ClearLane systems.   The acquisition documents at issue would also not provide any pre-infringement or "benchmark" value of Seon Design's technology or the technologies of any of the other Safe Fleet/Seon Defendants. Moreover, Seon Design's ABLE products, which have a non-infringing substitute, had no sales at the time of either acquisition.  The first sale of a ClearLane system occurred after the February 2024 acquisition.

Similarly, trade-secret-misappropriation damages are based on actual loss, unjust enrichment, or reasonable royalites based off the alleged trade secret.[32]  Actual loss can include lost profits or other measurable harm attributable to the defendant's actions.[33]  Unjust enrichment damages can include "avoided costs"—i.e., the development costs that a party avoided incurring when it misappropriated trade secrets.[34]  And a reasonably royalty is an approximation of a royalty under a voluntary licensing agreement.[35]  In other words, for trade-secret-misappropriation damages too, the information sought about the 2018 and 2024 acquisitions is irrelevant.

Courts have quashed subpoenas that request confidential commercial information when it has no connection to the underlying litigation.  For example, in *MG Freesites Limited v. Scorpcast, LLC*, a party in a patent infringement action successfully quashed a subpoena seeking the party's confidential commercial information that was in the possession of third-party Mastercard.[36]  The

---

[32] *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 392 (S.D.N.Y. 2023).

[33] *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 185 (S.D.N.Y. 2002).

[34] *Better Holdco*, 666 F. Supp. 3d at 393.

[35] *Better Holdco*, 666 F. Supp. 3d at 354.

[36] Case No. 22-MISC-361, 2023 WL 2822272, at *1 (S.D.N.Y. Apr. 7, 2023).

subpoena at issue sought confidential commercial information that was irrelevant to the underlying patent infringement claims. [37]  Similarly, Hayden's subpoena seeks the Safe Fleet/Seon Defendants's confidential commercial information, which has no connection to the underlying patent-infringement or trade-secret-misappropriation litigation.

In correspondence between the parties and in earlier court filings (*see* Part III.C, *infra*), Hayden has alleged that the 2024 acquisition documents are relevant to commercial success, patent invalidity, alter-ego issues, and willful-patent-infringement issues.  These arguments are meritless.

**Commercial Success**: The Safe Fleet/Seon Defendants do not dispute that factors relevant to the patent damages analysis include profitability and commercial success.[38]  The profitability and the commercial success must, however, be of a "product made under the patent."[39]  The relevant documents are thus sales, contracts, invoices, and offers for sale of the allegedly infringing ClearLane systems (e.g., the value of the technology).  But there were no sales of the ClearLane systems or any ABLE system at the time of the February 2024 Clarience acquisition.  Thus, any information relating to the February 2024 Clarience acquisition is irrelevant to profitability or commercial success of an allegedly patent-practicing product—ClearLane had no revenue or profits at the time of acquisition.  Hayden also fails to mention that the Defendants in the underlying action have produced the relevant information such as invoices, contracts, responses to requests for proposals.

Contrary to Hayden's assertions, the Clarience acquisition is not relevant to damages because the acquisition was a stock purchase agreement involving 33 companies and endless products, not the hypothetical license for the patented technology demanded by the *Georgia-*

---

[37] *MG Freesites*, 2023 WL 2822272, at \*4–5 (S.D.N.Y. Apr. 7, 2023).
[38] *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).
[39] *Id.*

*Pacific* framework. An agreement to acquire stock ownership in a portfolio of companies is not relevant to determining a royalty on products that have not yet been sold. The acquisition was not even on an individual-company basis, much less an individual-product basis.

**Secondary Considerations of Non-Obviousness (Patent Validity)**: The same argument holds for Hayden's flawed argument relating to the relevance of these acquisition documents with respect to patent validity because commercial success involves showing sales of a product covered by the patent and a nexus between the sales and the claimed invention.[40] But here, because there were no sales of the ClearLane ABLE system, the 2024 Clarience acquisition documents are irrelevant to commercial success.[41]

**Alleged Independent Economic Value of Trade Secrets**: The argument that Clarience's February 2024 acquisition of a portfolio of 33 companies is somehow relevant to the purported independent economic value of and damages relating to Hayden's alleged LPR camera trade secrets is without any legal or factual support and should be rejected. The defendants in the EDNY Case and the defendant in the companion EDTX case (*see* fn.46, *infra*) have never sold a product that Hayden claims contains its alleged trade secrets. The ClearLane system uses cameras that Hayden agrees do not contain its alleged trade secrets. Hayden can establish its own alleged independent economic value without necessitating third-party discovery.

**Willfulness**: The argument that Clarience's February 2024 acquisition, including any pre-acquisition diligence, is relevant to willful infringement is erroneous. Clarience is not a defendant in the EDNY Case or the companion EDTX case (*see* fn.46, *infra*). Thus, Clarience's knowledge

---

[40] *Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010) ("The commercial success of a product is relevant to the non-obviousness of a claim only insofar as the success of the product is due to the claimed invention.").

[41] *See In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (explaining that even unit sales without knowing whether the number of sales was a significant quantity does not show commercial success).

of the patents has no bearing on any willfulness by the named defendants.  Hayden should not be allowed to use a willfulness allegation against named defendants as the basis for a fishing expedition against Oak Hill, a non-party.  Moreover, the Safe Fleet/Seon Defendants already agreed to search for documents provided to Clarience in connection with the acquisition with respect to their knowledge of the asserted patents.  Indeed, the Safe Fleet/Seon Defendants have already produced thousands of pages of documents (e.g., pictures, messages, emails, etc.) specifically directed to "competitive analysis" and "risk assessment" documents, and have produced documents showing their first knowledge of the asserted patents.  Hayden already has the information it seeks from the entities that are actually accused of willful infringement.

**Alter Ego and Vicarious Liability**: The argument that information relating to the acquisition may be relevant to alter-ego and vicarious-liability issues, such as capitalization, ownership overlap, shared resources, and debt guarantees, is also erroneous.  The Safe Fleet/Seon Defendants have already produced such documents (e.g., resource-sharing agreements) in the underlying litigation and have indicated a willingness to produce any additional documents, to the extent any exist.  Hayden provides no reason why the information it already has is insufficient or why it needs additional information from a non-party.

Even if these acquisition documents had any relevance—they do not—the requested discovery is not proportional to the needs of this case.  As discussed above, there were no sales of the allegedly infringing ClearLane system prior to the acquisition, and the Safe Fleet/Seon Defendants have produced over 1,000,000 pages of documents from email, Teams, Slack, cell phones, and other repositories.  Moreover, privacy and confidentiality interests factor into the proportionality analysis.[42]  Therefore, Hayden's demand for sensitive and confidential acquisition

---

[42] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984) (explaining that although Rule 26 "contains no specific reference to privacy or to other rights or interests that may be implicated,

information from a non-party is not proportional. As there is no "likely benefit" from the demanded discovery, which reinforces the disproportionality of Hayden's requests.

2.    Hayden has No Justification or Need for Further
Discovery on Seon Design's ABLE Systems

The Oak Hill subpoena seeks information about Seon Design's ABLE Systems, which, to the extent it is relevant to the underlying litigation, Hayden already has a fulsome production from the Safe Fleet/Seon Defendants. Hayden cannot dispute that the Safe Fleet/Seon Defendants have already produced over 1,000,000 pages of documents, including invoices, contracts, and other financial documents relevant to damages. Hayden has not shown that the Safe Fleet/Seon Defendants' discovery responses are not enough for it to assess and calculate its alleged damages, such that it must obtain additional discovery from third parties.[43] Any further discovery from Oak Hill, especially where Hayden has not shown any gaps in Safe Fleet/Seon Defendants' discovery responses, is not proportional to the needs of the underlying case.

3.    Hayden has No Justification or Need for General Financial
Information About the Safe Fleet Family of Companies

The Oak Hill subpoena seeks general financial information about the Safe Fleet family of companies, which, to the extent it seeks financial information for products other than ABLE products, is entirely unrelated to the allegations in the underlying litigation. Products other than ABLE products have no nexus to any alleged infringement or misappropriation because ABLE

---

such matters are implicit in the broad purpose and language of the Rule").

[43] *Burns v. Bank of America*, 2007 WL 1589437, at *4 (S.D.N.Y. June 4, 2007) (noting that if documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness pursuant to Rule 45); *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A SR, 2013 WL 5652759, at *4 (W.D.N.Y. Oct. 15, 2013) (holding that a motion to quash nonparty subpoena was granted where the only relevant documents requested could easily have been requested during the normal course of discovery).

– 14 –

products are the only accused products.[44]  To the extent Hayden seeks information about ABLE products by these requests, as explained above, Hayden already has a fulsome production, including invoices, contracts, and other financial documents.

Hayden has not shown that the Safe Fleet/Seon Defendants' discovery responses in the underlying litigation are not enough to fulfill any need Hayden has for financial information, so any further discovery from Oak Hill would not be proportional to the needs of the underlying case.

### C.    The Subpoena Should be Quashed to Prevent Disclosure of Privileged Information

Safe Fleet/Seon Defendants privileged information is within the scope of the Oak Hill subpoena.  The subpoena should be quashed or a protective order should issue to prevent disclosure of that information.  Hayden broadly seeks, for example, "communications regarding the negotiation of" the acquisitions (RFPs 5, 7), which would include correspondence with counsel. Hayden also broadly seeks, as another example, "communications relating to [the Safe Fleet/Seon Defendants'] ABLE business" (RFP 1) and "communications sufficient to show any analyses, evaluations, [or] assessments . . . relating to . . . intellectual property relating to ABLE Technology . . . or this Litigation" (RFP 13), which would also include correspondence with counsel.

### D.    The Subpoena Should Be Quashed to Prevent the Risk of Inconsistent Rulings

The 2024 acquisition documents Hayden seeks from Oak Hill are already subject to two motions to compel filed by Hayden against the Safe Fleet/Seon Defendants in the underlying litigation,[45] a motion to compel filed by Hayden against a corporate relative of Safe Fleet/Seon Defendants in a companion litigation,[46] a motion to compel filed by Hayden against Clarience

---

[44] *Hayden*, Case No. 1:23-cv-03471, ECF 172 ¶¶ 60–64.
[45] EDNY Case, ECF No. 315-1 (moving to compel production of acquisition documents) and ECF No. 356 (moving to compel an interrogatory response about an acquisition).
[46] *Hayden AI Technologies, Inc. v. FleetMind Seon Solutions, Inc.*, Case No. 2:25-cv-00528-JRG-

Technologies in the Eastern District of Michigan,[47] and another third-party subpoena to KKR Group Co., Inc., which will be subject to a forthcoming motion to quash in this Court. Thus, the Court should grant this motion and quash the Oak Hill subpoena to prevent the risk of inconsistent rulings and to arrest Hayden's over-the-top litigation tactics.

## IV.    Conclusion

Because Hayden's subpoena to Oak Hill seeks information that is irrelevant, privileged, and disproportionate to the needs of the underlying litigation, and risks inconsistent rulings from three separate courts, this Court should quash Hayden's subpoena in its entirety or issue a protective order blocking in their entirety Hayden's document and testimony requests of Oak Hill.

Dated: May 8, 2026

Respectfully submitted,

By: */s/ Jordan A. LaVine*
Jordan A. LaVine (No. 5061932)
  jordan.lavine@flastergreenberg.com
Mark Basanta (*pro hac vice* forthcoming)
  mark.basanta@flastergreenberg.com
**FLASTER GREENBERG P.C.**
295 Madison Avenue, 12th Floor
New York, NY 10017
Telephone (212) 268-7111

Michael J. Bonella (*pro hac vice* forthcoming)
  michael.bonella@flastergreenberg.com
Aakash K. Patel (*pro hac vice* forthcoming)
  aakash.patel@flastergreenberg.com
**FLASTER GREENBERG P.C.**
1717 Arch Street, Suite 3300
Philadelphia, PA 19103
Telephone (215) 279-9393

*Attorneys for Movants*

---

RSP (E.D. Tex.), ECF No. 83.
[47] Case No. 2:26-mc-50413-LJM-DRG (E.D. Mich.) (filed Apr. 16, 2026).

– 16 –